Abid R. Qureshi
Direct Dial: 202.637.2240
abid.qureshi@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

April 2, 2014

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:     *Restorsea v. Aqua Bio Technology*, No. 14 CV 0811-ALC-JLC: Pre-Motion Request

Dear Judge Carter:

Pursuant to Rule 2(A) of this Court's Individual Practice Rules, Defendant Aqua Bio Technology ASA ("ABT") respectfully requests a pre-motion conference regarding a Motion to Dismiss it seeks to file in connection with the above-captioned litigation. As detailed below, the agreements that underlie the single claim asserted in Plaintiff Restorsea, LLC's ("Restorsea") Complaint mandate that the parties resolve disputes through arbitration, not litigation.

**I.     THE PARTIES ARE BOUND BY TWO COMPLEMENTARY AGREEMENTS**

As described in the Complaint, [ECF No. 2], ABT and Restorsea are parties to two material agreements: (1) a "Supply and License Agreement," (the "Supply and License Agreement"); and (2) an "Amended and Restated Exclusivity Agreement," (the "Exclusivity Agreement")." *See* Compl. ¶ 6.[1] The original versions of both agreements are dated March 19, 2012, and the amended/restated versions are dated September 8, 2012. Together, the two agreements form one transaction between the parties: the Supply and License Agreement describes ABT's commitment to supply Restorsea with certain proprietary "Products," and the Exclusivity Agreement describes the exclusive nature of that arrangement. Each agreement contains a parallel clause incorporating the other. The clauses provide that the Exclusivity Agreement and the Supply and License Agreement "constitute the entire agreement and understanding between the Parties" and "are intended to be complementary," and they provide a

---

[1] ABT plans to submit copies of these agreements as attachments to its Motion to Dismiss, as both are incorporated into the Complaint by reference and are integral to the allegations in the Complaint. *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994); *cf. Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y. 2010). ABT has not attached copies of these agreements to this letter because they contain certain confidentiality restrictions requiring it to provide advance notice to Restorsea.

LATHAM&WATKINS LLP

mechanism for resolving "any inconsistency, ambiguity or conflict."  In addition, the Exclusivity Agreement uses terms that are defined solely in the Supply and License Agreement (including the term "Products," whose meaning is central to Restorsea's claim in this action), and the Exclusivity Agreement does not contain any confidentiality, force majeure, liability, notice of communication, or governing law provisions—all of which appear solely in the Supply and License Agreement.

The Exclusivity Agreement is silent with regard to dispute resolution, but the Supply and License Agreement contains a broad arbitration clause that covers disputes "arising out of or in connection with this Agreement."  In relevant part, the Supply and License Agreement provides that the "Parties agree to initially submit any claim or controversy to designated higher-level managers within their respective organizations for good faith negotiation.  If such dispute is not resolved within thirty (30) days, the matter shall be referred to and finally resolved by arbitration in accordance with Section 19.3."[2]  Section 19.3 mandates arbitration:

> 19.3  Arbitration.  Any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, which could not be resolved amicably, shall be submitted to final and binding arbitration held in London, UK to be administered in accordance with the then current arbitration guidelines and rules of the International Chamber of Commerce. . . . The rights of the parties under this Article 19 shall be the exclusive dispute resolution mechanisms with respect to any claim or controversy under this Agreement.

Based on this express language, governing New York law supports ABT's position that arbitration is the appropriate mechanism to resolve the claim asserted by Restorsea.

## II. THE PARTIES HAVE AGREED TO ARBITRATION AS THE EXCLUSIVE FORUM FOR THE RESOLUTION OF THIS DISPUTE

"[T]he Federal Arbitration Act [("FAA")]. . . establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (internal citations omitted).  Section Three of the FAA precludes federal courts from ruling on issues that are referable to arbitration under a written agreement between the parties.  9 U.S.C. § 3.  "Although staying, and not dismissing, all arbitrable claims is a remedy specifically contemplated by the FAA . . . , where all of the issues raised in the

---

[2]  The Supply and License Agreement does contain an exception allowing either Party to file litigation to enforce its intellectual property rights or protect its confidential information.  Neither exception applies to this dispute.

Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings. Thus, where defendants have sought dismissal rather than a stay, courts in this district have granted dismissal." *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) (citations, internal quotation marks, and alterations omitted).

As described above, both the Supply and License Agreement and the Exclusivity Agreement were executed contemporaneously for the common purpose of effecting a single business transaction for the supply and rights to ABT's Product, and hence must be read and interpreted together. *See, e.g.*, *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993) ("Generally, separate writings are construed as one agreement if they relate to the same subject matter and are executed simultaneously."). In such situations, courts in the Second Circuit regularly find that the dispute resolution provision contained in one applies to the other. *See, e.g., S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 195-96 (2d Cir. 1984) (affirming that the arbitration clause in an agreement applied to subsequent agreements that were executed in accordance with, or referenced the prior agreement); *Putnam Mills Corp. v. So-Sew Styles, Inc.*, No. 84 Civ. 8080, 1985 U.S. Dist. LEXIS 14532, at *3 (S.D.N.Y. Oct. 25, 1985) (holding the arbitration clause in contract I applied to contract II where "[c]ontract II specifically refers to and cannot be read apart from contract I").

Moreover, the sole cause of action in Restorsea's complaint is expressly subject to the arbitration requirement because it clearly arises "out of or in connection with" the Supply and License Agreement itself. The Complaint alleges that ABT is distributing certain products in violation of its exclusivity commitments, *see* Compl. ¶¶ 34-42, and the specifications that define what products ABT can and cannot distribute to third-parties appear only in the Supply and License Agreement, <u>not</u> in the Exclusivity Agreement. Despite Restorsea's attempt to characterize this dispute as "about the Exclusivity Agreement only," it actually arises "in connection with" with Supply and License Agreement, and therefore is subject to the arbitration clause in that agreement.

Accordingly, ABT respectfully requests permission to move for dismissal of this action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[3]

---

[3] In the alternative, ABT will request that the Court stay this case pending arbitration, or, if the Court finds that the arbitration clause is not applicable, that the Court dismiss under Federal Rule of Civil Procedure 12(b)(6) any portion of the Complaint's sole cause of action that arises from Restorsea's allegations about the product "Beauty Propelline" because the Complaint does not contain any well-pleaded factual allegation that ABT has "distributed" that product to any third-party. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

LATHAM&WATKINS LLP

                                     Very truly yours,

                                     /s/ Abid R. Qureshi
                                     Abid R. Qureshi
                                     (*pro hac* application pending)

                                   *Attorneys for Defendant Aqua Bio Technology ASA*

cc:    All Counsel of Record (via ECF)