# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, New York 10022

Joseph Serino, Jr., P.C.
To Call Writer Directly:
(212) 446-4913
joseph.serino@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

April 7, 2014

**Via ECF Filing**

The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   *Restorsea, LLC v. Aqua Bio Technology ASA* (No. 14-cv-0811-ALC-JLC)

Dear Judge Carter:

Restorsea, LLC ("Restorsea") submits this response to the April 2 letter of Aqua Bio Technology ASA ("ABT") requesting a pre-motion conference in advance of its motion to compel arbitration. ABT's motion would not be well taken because there is no agreement to arbitrate this dispute.

**I.   The Applicable Agreement Does Not Provide for Arbitration.**

This case is about ABT's breach of the parties' Exclusivity Agreement ("EA"), an agreement that does <u>not</u> include an arbitration provision. ABT's position hinges on its contention that the arbitration clause in a separate agreement between the parties, the Supply and License Agreement ("SLA"), encompasses Restorsea's claims. Not so. Restorsea is the master of its pleadings, and the Complaint makes clear that this case is about the EA, not the SLA. Arbitration "is a matter of consent, not coercion," and parties are free to "limit by contract the issues which they will arbitrate[.]" *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). By including an arbitration clause in the SLA but not the EA, the parties expressed their clear intent that EA-related claims are <u>not</u> arbitrable. And the FAA's presumption in favor of arbitration does not apply here "because the parties dispute not the scope of an arbitration clause but *whether* an obligation to arbitrate exists." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011).

**A.   Restorsea's Claims Relate Solely to the Exclusivity Agreement.**

ABT's insistence that the SLA and the EA "must be read and interpreted together" ignores the nature of these agreements and the facts that gave rise to this case. There is nothing unusual about parties entering into multiple agreements that relate to the same business transaction, yet deal with different aspects (including dispute resolution) of that same transaction

**KIRKLAND & ELLIS LLP**

The Honorable Andrew L. Carter, Jr.
April 7, 2014
Page 2

differently.[1]  And the fact that the EA refers to the SLA, standing alone, does not mean that it has incorporated the SLA's provisions.  *Rosen v. Mega Bloks Inc.*, 2007 WL 1958968, at *10 (S.D.N.Y. July 6, 2007) ("The mere fact that a contract refers to another contract does not mean that it has 'incorporated' the other contract.").

Here, the parties' rights and duties under the EA are distinct from their rights and duties under the SLA.[2]  The EA (not the SLA) prohibits ABT from supplying certain products to companies other than Restorsea, and the EA (not the SLA) grants Restorsea the exclusive right to import and sell products that contain ABT's ingredient.  (*See* Compl. ¶¶ 22-24.)  This case is all about these "exclusivity" rights and obligations which exist solely under the EA.  (*Id.* ¶¶ 8, 28.)

ABT's claim that Restorsea's action "clearly arises" out of the SLA because the SLA defines the products that, in turn, are restricted under the EA misses the point.  The SLA does not impose any "exclusivity" obligation on ABT with respect to distribution of those products; and the point is that the "exclusivity" obligation— which is the subject of this action—exists only under the EA, not the SLA.

ABT's assertion that the EA and the SLA "incorporat[e]" each other because they contain a clause which states that they both "constitute the entire agreement" misunderstands the purpose of that clause.  That is not an incorporation clause; it is a *merger clause* relevant only to the application of the parol evidence rule.[3]  *See Rosen*, 2007 WL 1958968, at *5 (rejecting <u>same argument</u> because "the merger clause . . . is simply irrelevant to the question of whether [one agreement's] arbitration clauses govern [another agreement].").  And while the EA and the SLA do provide that they "are intended to be complementary," this general provision cannot be read to insert into the EA an arbitration clause that the parties themselves elected not to include.  *E.g.*, *Wonder Works Constr. Corp. v. R.C. Dolner, Inc.*, 73 A.D.3d 511, 513 (1st Dep't 2010) ("If an agreement to arbitrate is incorporated by reference[,] the reference 'must clearly show such an intent'") (citation omitted).

Finally, ABT's argument that the SLA and EA "must be read and interpreted together" because they were executed simultaneously and concern the same transaction reaches too far and is not the law.  <u>First</u>, the case relied on by ABT, *Commander Oil Corp. v. Advance Food Serv.*

---

[1] *See, e.g.*, *Fit Tech Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 10 (1st Cir. 2004) (arbitration provision in employment agreement did not cover claims related to asset purchase agreement, even though the two agreements were "related to the same business sale," because "the two [agreements] deal with different aspects of the sale" and "[n]o one can seriously argue that clauses can be plucked at random from one agreement and inserted into the other.").

[2] Because the EA and the SLA are different agreements that address different issues, ABT's reliance on *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190 (2d Cir. 1984) is misplaced.

[3] The sole purpose of a merger clause "is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary, or contradict the terms of the writing."  *See Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (2001).  It has no relevance to incorporation, let alone arbitration issues.

# KIRKLAND & ELLIS LLP

The Honorable Andrew L. Carter, Jr.
April 7, 2014
Page 3

*Equip.*, 991 F.2d 49 (2d Cir. 1993) is <u>not</u> an arbitration case; it says nothing about whether an arbitration clause from one agreement can be incorporated into another.  <u>Second</u>, it is well settled that "[p]arties are free to enter into multiple contracts as part of a single transaction without the provisions in one contract governing another contract."  *Rosen*, 2007 WL 1958968, at *5.  <u>Third</u>, even if the SLA and EA are "read and interpreted together," the upshot is that claims under the SLA are arbitrable but claims under the EA, like those here, are not.  ABT and Restorsea are sophisticated parties, and both were represented by counsel in drafting the SLA and the EA.  The parties knew how to incorporate a provision from one agreement into another, but they did not do so with respect to the SLA's arbitration clause.

**B.    The SLA Itself Confirms that Restorsea's Claims Are Non-Arbitrable.**

Even if the SLA were relevant (and it is not), the plain language of its arbitration clause further confirms that Restorsea's claims are <u>not</u> arbitrable.  The scope of the SLA's arbitration clause is limited to "any dispute, controversy or claim arising out of or in connection <u>with this [SLA] Agreement</u>, or the breach, termination or invalidity <u>thereof</u> . . . ."  As such, the SLA's arbitration clause does not cover this dispute, because this dispute arises under the EA and not the SLA.  Moreover, the SLA's arbitration clause must be enforced as written and cannot be expanded to encompass disputes arising under <u>other agreements</u>, like the EA.  *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (in interpreting an arbitration clause, "words and phrases are given their plain meaning.") (citation omitted).

**II.    The Complaint Is Not Missing "Distribution" Allegations.**

ABT's alternative argument—that it may move to dismiss the Complaint, in part, for lack of allegations that ABT distributed the product "Beauty Propelline" to third parties—is belied by the Complaint's allegations.  For example, the Complaint alleges that "ABT actively markets and sells to third parties . . . Beauty Propelline." (Compl. ¶ 35.)  It also alleges that ABT breached the EA by "offering for sale, selling, supplying, or otherwise distributing . . . Beauty Propelline[.]" (*Id.* ¶ 56.)[4]

Respectfully submitted,

/s/ Joseph Serino, Jr.
Joseph Serino, Jr., P.C.

*Attorneys for Plaintiff Restorsea, LLC*

cc:    All counsel of record (via ECF)

---

[4] Restorsea looks forward to further discussing the issues raised in ABT's letter at the pre-motion conference.  For its part, Restorsea would like to discuss a potential motion for an order that would allow Restorsea to make upcoming payments due under the EA into escrow, rather than to ABT, pending the final resolution of this case.

**KIRKLAND & ELLIS LLP**

The Honorable Andrew L. Carter, Jr.
April 7, 2014
Page 4